UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KABITA CHOUDHURI,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | Case No. 15-cv-03608-VC (KAW)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 150 |

Plaintiff Kabita Choudhuri brought this suit against Defendant Wells Fargo Bank, N.A., alleging violations of the Real Estate Settlement Procedures Act ("RESPA") and the California Homeowner Bill of Rights ("HBOR"), as well as bringing claims of promissory estoppel and breach of the implied covenant of good faith and fair dealing. (Second Amended Compl. ("SAC"), Dkt. No. 74.)[1] On October 11, 2017, Defendant filed the instant motion for sanctions. (Def.'s Mot., Dkt. No. 150.)

Having considered the papers filed by the parties, the relevant legal authority, and the arguments advanced at the November 16, 2017 hearing, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for sanctions.

**I. BACKGROUND**

This case is the seventeenth action brought by Plaintiff against Defendant, based on the same loan. (Def.'s Mot. at 7 fn. 3 (listing prior sixteen cases, appeals, and bankruptcy adversary proceedings).) On January 6, 2017, the case was referred to the undersigned for discovery

---

[1] On January 25, 2017, the presiding judge dismissed all claims against Defendant Treena Berlinsky with prejudice, and dismissed the claim for breach of the implied covenant of good faith and fair dealing against both Defendants with prejudice. (Dkt. No. 92 at 2.)

1  purposes. (Dkt. No. 89.)

2  On April 25, 2017, Defendant filed four discovery letters. (Dkt. Nos. 112-115.) On May 4, 2017, the Court terminated the four discovery letters because the letters did not comply with the Court's standing order. (Dkt. No. 117 at 1-2.) Nevertheless, the Court addressed the issues raised in the letters in order to provide the parties with guidance. (*Id.* at 2.)

The first discovery letter concerned Plaintiff's assertion of her "Fifth Amendment rights" in response to each question during Plaintiff's deposition. (*Id.*) The Court explained that the Fifth Amendment only protected against disclosures that could be used in criminal proceedings, and that Plaintiff's invocation of the Fifth Amendment was not proper. The Court thus required Plaintiff to provide dates for a second deposition, and required that Plaintiff not assert the Fifth Amendment unless it involved a disclosure that could be used in a criminal prosecution. The Court warned that failure to comply could result in the Court recommending sanctions, including terminating sanctions. The second and third discovery letters concerned Plaintiff's responses to Defendant's requests for production ("RFPs") and interrogatories, respectively. (*Id.* at 3, 4.) Plaintiff had refused to provide any documents or responses, arguing that the presiding judge already found the complaint to be sufficient and that Defendant already possessed all of the documents sought. Plaintiff further stated that she would only identify relevant documents after Defendant provided responses to her requests for production. The Court found that these were not proper objections, and also rejected Plaintiff's assertions that the requests were only intended to hound and harass the plaintiff or that the requests had been "asked and answered." (*Id.* at 3-5.) Finally, the fourth discovery letter concerned Plaintiff's "asked and answered" objections to Defendant's requests for admission. (*Id.* at 5.) The Court found that the requests were not duplicative, and that Plaintiff had to respond to the extent the requests for admission were not repetitive. (*Id.* at 5-6.) The Court concluded the order by suggesting that Plaintiff contact the Federal Pro Bono Project's Help Desk for assistance with discovery. (*Id.* at 6.)

On May 22, 2017, Defendant requested that the presiding judge extend the remaining litigation deadlines and trial date by thirteen to fifteen weeks, due in part to Plaintiff's lack of cooperation in responding to discovery. (Dkt. No. 119 at 3.) Defendant stated that despite the

undersigned's May 4, 2017 order, Plaintiff had failed to provide any additional written discovery response. (*Id.*) Plaintiff opposed the motion, but did not appear to deny her failure to provide further written discovery. (Dkt. No. 123. at 2.) On May 30, 2017, the presiding judge granted the motion to extend the deadlines. (Dkt. No. 124 at 2.)

On August 16, 2017, Defendant filed a second motion to extend the remaining litigation deadlines and trial date by three months, due to Plaintiff's failure to produce documents responsive to Defendant's requests for production. (Dkt. No. 131 at 2-3.) Defendant also stated that Plaintiff had failed to provide any meaningful discovery responses or document production. (*Id.* at 3.) Plaintiff opposed the motion, filing the same opposition she had filed as to Defendant's May 22, 2017 motion. (Dkt. No. 133.) On August 28, 2017, the presiding judge granted Defendant's motion to change time, and ended the order by stating:

> In light of the substantial delay and expense caused by Ms. Choudhuri's numerous discovery violations, Ms. Choudhuri is warned that if she fails to comply meaningfully with her discovery obligations going forward, her case will be dismissed as a discovery sanction.

(Dkt. No. 137.)

On August 25, 2017, the parties filed joint discovery letters regarding Plaintiff's responses to Defendant's RFPs and interrogatories. (Dkt. Nos. 135, 136.) With respect to the RFPs, Plaintiff had apparently brought a binder to her re-noticed deposition, and had stated towards the end of the deposition that many of the documents in the binder were relevant. (Dkt. No. 135 at 3.) Defendant reserved the right to keep the deposition open pending Plaintiff's document production. (*Id.*) Defendant informed Plaintiff that they would engage in further meet and confer efforts to obtain her additional document production and re-notice her deposition if needed, to which Plaintiff responded that Defendant was rejecting her offer to keep the documents. (*Id.* at 3-4.) After Defendants withdrew a number of the RFPs, on June 27, 2017, Plaintiff responded with the 7,000-page loan file which Defendant had provided to her earlier in the lawsuit, and a list of blanket objections. (*See* Dkt. No. 135, Exh. E.) On June 28, 2017, Defendant asked Plaintiff if her production was complete, and Plaintiff responded that she believed more documents existed but that she did not have to produce them prior to the discovery cut-off date of August 17, 2017.

3

1 (Dkt. No. 135 at 4.) As the parties' July 13, 2017 meet and confer, Plaintiff did not bring any additional documents and did not confirm whether her production was complete. (*Id.*) At the August 18, 2017 meet and confer, Plaintiff stated that discovery was ongoing, and claimed that she had lost the binder of documents and was still trying to find it. (*Id.*)

In the joint discovery letter, Defendant argued that Plaintiff should be required to produce all documents, or to state under oath that she did not have any further responsive documents. (Dkt. No. 135 at 5-14.) Defendant further argued that if Plaintiff failed to do so, the Court should prohibit Plaintiff from introducing as evidence at summary judgment or trial any documents supporting her claims other than those already produced to her by Defendant. In response, Plaintiff did not object to the substance of the RFPs or defend her prior objections, instead arguing that she had already produced 7,000 pages in evidence, had previously advised Defendant that she would be out of town until August 15 and would continue searching for documents upon her return, that Defendant had refused the binder she offered to let them keep, that discovery was ongoing, and that it was unethical and illegal for Defendant to request the evidentiary sanctions sought. (*Id.* at 6-15.)

As to the interrogatories, Plaintiff had either failed to provide further responses or objected on the grounds that the interrogatories were compound, "nonsensical," not clearly defined, not reasonably calculated to lead to discovery of admissible evidence, duplicative, burdensome, or sought information that was "proprietary" and "privileged." (Dkt. No. 136 at 3, 7-8.) At the July 13, 2017 meet and confer, Plaintiff did not bring additional responses and would not confirm whether her responses were complete. (*Id.* at 2.) The parties also had a second meet and confer on August 18, 2017. (*Id.*) In the letter, Defendants requested that Plaintiff be required to produce substantive responses within two weeks, or to state under oath that she had no responsive information. (*Id.* at 5.) Plaintiff, in turn, argued that she had produced over 7,000 pages in evidence, Defendant never objected to her responses, Defendant failed to explain how her responses were incomplete, and that she had advised Defendant that she would be out of town until August 15 and that discovery was ongoing. (*Id.*)

On September 12, 2017, the Court issued an order requiring Plaintiff to provide a

4

supplemental document production or a verification under oath that she had no additional documents within fourteen days. (Dkt. No. 141 at 5.) In so ordering, the Court explained that the fact that the discovery deadline had not yet passed was not a legitimate reason to withhold production of documents, as Plaintiff was not entitled to withhold all document production until the last day of discovery. (*Id.*) The Court warned that Plaintiff's failure to produce additional responsive documents or a verification under oath that she had no additional documents could result in the Court recommending evidentiary sanctions prohibiting Plaintiff from introducing any additional documents in response to a summary judgment motion or at trial. (*Id.*)

The Court also rejected Plaintiff's arguments regarding the interrogatories, again explaining that the fact that Plaintiff had produced some documents or that the discovery deadline had not yet passed did not excuse Plaintiff from responding in full to the interrogatories. (Dkt. No. 141 at 8.) The Court also explained that because Plaintiff chose to bring the instant lawsuit, she had to comply with her discovery obligations by explaining her claims and identifying the relevant documents and witnesses. (*Id.* at 8-9.) The Court ordered Plaintiff to provide supplemental responses or a verification under oath that she had no additional information within two weeks, and again warned that failure to comply could result in sanctions for failure to cooperate in the discovery process, including monetary or evidentiary sanctions, or a recommendation of terminating sanctions, pursuant to Federal Rule of Civil Procedure 37. (*Id.* at 8-10.) As with the Court's May 4, 2017 order, the Court informed Plaintiff that she could contact the Federal Pro Bono Project's Help Desk to get assistance with discovery. (*Id.* at 10.)

On September 25, 2017, Plaintiff filed a "Response" to the September 12, 2017 discovery order. (Dkt. No. 143.) For Interrogatory Nos. 1-7, in which Plaintiff was asked to state all facts concerning her claims, Plaintiff only copied and pasted from her second amended complaint, and provided no additional information. (*Compare* Dkt. No. 143 at 2-4 *with* SAC at 15-17; Dkt. No. 143 at 4 *with* SAC at 14; Dkt. No. 143 at 5-7 *with* SAC at 11-14; Dkt. No. 143 at 7-8 *with* SAC at 9-11; Dkt. No. 143 at 9 *with* SAC at 11; Dkt. No. 143 at 10-12 and 12-14 *with* SAC at 17-20.) With respect to the identification of persons with information concerning her claims, Plaintiff typically identified the same four individuals, including former Defendant Treena Berlinsky and

5

attorneys Adam Vukovich and Kimberley Paese, who have litigated the instant case.[2] (Dkt. No. 143 at 4, 7, 8, 9, 12, 13.) Plaintiff only identifies additional individuals in response to Interrogatory No. 2(b), in which she identifies nine individuals "plus multiple other characters," which Plaintiff does not name. (*Id.* at 5.) As to the identification of documents concerning her claims, Plaintiff repeatedly states that she had "provided all documents in her possession to the Defendants," that she had no other documents at this time, and that she reserved her rights to use any other documents that become discoverable. (*Id.* at 4, 5, 7, 8, 9, 12, 14.) Plaintiff also responded to Interrogatory No. 8(c)'s request for identification of documents concerning her emotional distress claim by not only stating that she had provided all documents in her possession to Defendant, but that the documents were already provided by her health advisor. (*Id.* at 15.) Similarly, with respect to Interrogatory No. 16's request for the identification of all communications Plaintiff had with Defendant from August 2014 to August 2015, Plaintiff only stated that she had provided all documents, had no other documents, and reserved her right to use any other documents that became discoverable. (*Id.*) Finally, Plaintiff identified six individuals who lived at the subject property from January 2015 to the present. Although the interrogatory response was signed, the response was not verified, as the interrogatories are not answered "in writing under oath." Fed. R. Civ. P. 33(b)(3).

The "Response" also included Plaintiff's responses to Defendant's RFPs. (Dkt. No. 143-1.) Every response contained the same copied and pasted statement: "Plaintiff has provided all documents in her possession to the Defendants. At this time, she has no other documents available. Plaintiff reserves her right to use as evidence at the hearing or trial, any other documents that become discoverable. Plaintiff attaches a declaration to that effect, in support of her response." (*Id.* at 1-12.) Like the interrogatory response, the RFP response was signed but not

---

[2] These responses are clearly incomplete; for example, with respect to her promissory estoppel claim, Plaintiff asserts that Ms. Berlinsky promised her that her application would be approved if a second income was present to support the household. (SAC at 12.) Third-party Ronjon Sen was allegedly present on this call. (*Id.* at 7.) Despite these allegations, Plaintiff does not identify Mr. Sen as a person with information concerning her promissory estoppel claim. (*See* Dkt. No. 143 at 7.)

verified. (*Id.* at 12.)

On September 26, 2017, Plaintiff filed a declaration in support of her response. Plaintiff asserted that she had produced in excess of 8,000 pages, and claimed that there had been "thefts that have occurred at her home and from her car," resulting in only documents related to this case to be stolen. (Dkt. No. 144 at 1.) Plaintiff stated that her medical records and loan payment records were recently stolen, and that a white binder containing over 1,000 pages was stolen from her home. (*Id.*)

On August 30, 2017, Defendant filed a motion to compel the deposition of third-party witness, Mr. Ronjon Sen. (Dkt. No. 138.) On October 5, 2017, the Court granted Defendant's motion to compel. (Dkt. No. 146.) The Court rejected Plaintiff's argument that Defendant should be required to formally contact Plaintiff to set up Mr. Sen's deposition, explaining that Plaintiff is not an attorney and did not represent Mr. Sen, and therefore "ha[d] no authority to set up or refuse a deposition on behalf of Mr. Sen." (*Id.* at 4 n.3.)

On October 11, 2017, Defendant filed the instant motion for discovery sanctions against Plaintiff. Defendant seeks terminating sanctions or, in the alternative, issue-specific sanctions preventing Plaintiff from presenting or refuting evidence on summary judgment or at trial. (Def.'s Mot. at 1.) Defendant also requested "monetary sanctions in an amount commensurate with its expenses incurred in preparing the instant motion and the related discovery letter briefs." (*Id.* at 19.) On October 24, 2017, Plaintiff filed an opposition. (Plf.'s Opp'n, Dkt. No. 152.) On October 31, 2017, Defendant filed its reply. (Def.'s Reply, Dkt. No. 153.) Defendant's reply did not include any information in support of the attorney's fees sought.

On November 6, 2017, Plaintiff filed a motion for summary judgment. (Dkt. No. 155.) In the motion, Plaintiff included an "Appendix of Supporting Evidence and Declarations," which cited five exhibits: (1) Complaint, (2) Second Amended Complaint, (3) Declarations ISO Summary Judgment, (4) Communications with Wells Fargo Bank, and (5) Miscellaneous. (*Id.* at 14.) The communications with Defendant, and "miscellaneous" were belatedly attached to the motion, and it is not clear what these exhibits consist of or whether they were included in Plaintiff's document production in response to Defendant's RFPs. (*See* Dkt. No. 53.)

On November 14, 2017, after the close of business, Defendant filed a declaration stating the amount of attorney's fees requested. (Dkt. No. 159.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37 allows the court to sanction a party that fails to obey a discovery order by:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Since dismissal and default are such drastic remedies, they may be ordered only in extreme circumstances, such as where there is willful disobedience or bad faith. *See in re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996). "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." *Conn. Gen'l Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). "Only 'willfulness, bad faith, and fault' justify terminating sanctions." *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)). All that is required to show willfulness or bad faith is "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993). "An explicit finding of willful noncompliance is necessary. It will not be inferred from findings that noncompliance was 'unexcused' or 'unjustified.'" *Newpark Mall LLC v. Crge Newpark Mall, LLC*, No. 15-cv-817-PJH, 2016 WL 742009, at *2 (N.D. Cal. Feb. 25, 2016) (citing Schwarzer, et al., Fed. Civ. Proc. Before Trial (2015 ed.) §11:2421).

Additionally, Rule 26(a) requires that a party provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information," as well as "a copy--or a description by category and location--of all documents, electronically stored information, and tangible items that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."  "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (internal quotation omitted).  "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Id.* "In determining whether this sanction should be imposed, the burden is on the party facing the sanction . . . to determine that the failure to comply with Rule 26(a) is substantially justified or harmless." *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008).

Finally, federal courts have the inherent authority to impose sanctions for misconduct, which may include an award for attorney's fees against attorneys and parties who "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or acted in "willful disobedience" of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) ("sanctions under the court's inherent powers may take the form of attorney's fees").  Bad faith is tested objectively.  A district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination and may be reversed only if it is clearly erroneous. *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986).

### III. DISCUSSION

#### A. Terminating Sanctions

Defendant requests that the Court recommend terminating sanctions pursuant to Rule 37, whether on the entirety of the case or on each cause of action. (Def.'s Mot. at 4, 9.)  The Ninth Circuit requires that the Court consider five factors in determining whether a case-dispositive sanction under Rule 37(b)(2) is just: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of a case on its merits; and (5) the availability of less

drastic sanctions. *Conn. Gen'l Life Ins. Co.*, 482 F.3d at 1096. The fifth factor asks "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Id.* "When a court order is violated, the first and second factors will favor sanctions and the fourth will cut against them." *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004). Thus, whether terminating sanctions are appropriate "turns on the third and fifth factors." *Id.*

Reviewing the five factors, the Court finds that terminating sanctions are not warranted at this juncture. The first factor weighs in favor of terminating sanctions; this case has been pending for over two years, and Plaintiff's failure to cooperate in discovery has already resulted in two postponements of the deadlines. (Dkt. Nos. 124, 137.) Notably, in the August 28, 2017 order granting Defendant's motion to change time, the presiding judge specifically found that the "substantial delay" was "caused by [Plaintiff]'s numerous discovery violations." (Dkt. No. 137 at 1.)

The second factor also weighs in favor of terminating sanctions. The Ninth Circuit has explained that dismissal serves the "court's need to manage the docket when a plaintiff's noncompliance has caused the action to come to a halt, thereby allowing the plaintiff, rather than the court, to control the pace of the docket." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). Again, Plaintiff's failure to cooperate in discovery is the reason this case has been delayed.

The third factor weighs in favor of terminating sanctions. Absent discovery, Defendant argues that it is substantially prejudiced because "[w]ithout a clear understanding of which evidence Plaintiff possesses to support her claim, if any, [Defendant] cannot meaningfully prepare a motion for summary judgment or prepare this matter for trial." (Def.'s Mot. at 8.) Further, because Plaintiff continues to reserve her right to present evidence which "becomes discoverable," Defendant contends that it will be prejudiced if Plaintiff is permitted to "produc[e] a 'smoking gun' on the eve of trial or to defeat [Defendant]'s dispositive motion." (Def.'s Reply at 3.)

The Court agrees that Plaintiff's failure to cooperate in discovery will prejudice Defendant, absent sanctions. Plaintiff has failed to produce substantive responses to the interrogatories,

1 instead copying and pasting wholesale portions of her second amended complaint, a significant
2 part of which is made up of legal arguments. Plaintiff fails to meaningfully identify witnesses,
3 excluding Mr. Sen and listing "plus other multiple characters," a response that is plainly deficient.
4 Plaintiff also refuses to identify specific documents that support her claims, instead asserting that
5 she has produced all documents; this is not the same as actually identifying specific documents
6 that are relevant to each claim. In any case, Plaintiff's document production itself is problematic;
7 while she asserts that she has provided more than 8,000 pages of documents, it appears these
8 documents are the exact production that Defendant provided Plaintiff.

Moreover, Plaintiff has failed to comply with the Court's order to definitively state that she has no additional documents; instead, Plaintiff couches her assertion that she has no further responsive documents by stating that she has no documents "at this time," and reserves her right to present "any other documents that become discoverable." (Plf.'s Opp'n at 1; Dkt. No. 143-1.) This is inadequate; there is no showing that Plaintiff has made any efforts to seek documents that she previously claimed she would search for after she returned on August 15. (Dkt. No. 135 at 6-15.) Further, while Plaintiff may argue that she has already provided "extensive information" at her deposition, this does not abrogate her discovery responsibilities to provide adequate responses to the RFPs and interrogatories. (*See* Plf.'s Opp'n at 1.) Plaintiff's reliance on Defendant's alleged failure to produce responses also does not justify her non-production; if Plaintiff believes Defendant's responses were deficient, her remedy is to file a joint discovery letter, not withhold discovery that she is legally obliged to provide. (*See id.*)

To the extent Plaintiff asserts that the reason she has no documents is because the documents were stolen, the Court finds this justification to not be credible. (*See* Dkt. No. 144 at 2.) At her May 23, 2017 deposition, Plaintiff agreed that she "[q]uite possibly" had a "truckful worth of documents at [her] house," and that the records were kept "[a]ll over the place." (Supp. Vulkovic Decl., Exh. A ("Choudhuri Dep.") at 56:2-7, Dkt. No. 153-1.) Plaintiff claimed she had sent documents to India and "many different countries" because of break-ins at her house, which occurred every time a hearing was scheduled. (*Id.* at 56:9-13, 16-25.) Plaintiff further stated that she had sent the documents to friends electronically, but that it was impossible for her to say how

11

she sent it. (*Id.* at 57:3-11.) There is no showing in the record that Plaintiff has made any effort to seek a return of these documents from the friends that she allegedly sent the documents to for safe-keeping.

Notably, although the theft of documents relevant to this case have purportedly been occurring since at least May 23, 2017, Plaintiff did not assert to the Court that the documents were stolen when she opposed Defendant's attempts to compel production of those documents. For example, in Plaintiff's June 23, 2017 response to Defendant's RFPs, she objected to the demands as nonsensical, unintelligible, unclearly defined, vague, ambiguous, seeking proprietary information, and not reasonably calculated to lead to the discovery of admissible evidence, but never asserted that the documents were stolen. (*See* Dkt. No. 135-4.) In the August 25, 2017 joint discovery letter brief, Plaintiff also never justified her failure to produce by stating that the documents were stolen; instead, she claimed she had informed Defendant that she would search for the documents upon her return on August 15, that Defendant refused the binder of documents, and that she would provide any other documents found as discovery was ongoing. (Dkt. No. 135 at 7-15.)[3] Instead, it was only after the Court ordered Plaintiff to produce the documents within fourteen days that Plaintiff for the first time asserted to the Court that the documents were stolen.

For these reasons, the Court finds Plaintiff's claim of the multiple thefts of only documents related to her cases to be highly implausible, at best. Thus, Plaintiff has provided no legitimate reason for her failure to cooperate in discovery, and this failure to cooperate in discovery will prejudice Defendant absent sanctions. *See Computer Task Grp., Inc.*, 334 F.3d at 1116 ("failure to produce documents as ordered is considered sufficient prejudice") (internal quotation and modifications omitted). For example, the prejudice to Defendant is already apparent by Plaintiff's filing of a summary judgment motion, which apparently relies on unidentified exhibits of "communications with Wells Fargo Bank" and "miscellaneous," which was belatedly attached to the summary judgment motion. It is not clear Defendant was previously provided with these

---

[3] The Court also notes that Plaintiff apparently informed Defendant that the binder of documents was "lost," but now asserts that the binder "was stolen from her home." (Dkt. No. 135 at 6; Dkt. No. 144 at 2.) This is another inconsistency which further undermines Plaintiff's credibility.

12

documents that Plaintiff purports to rely on, and Defendant cannot reasonably be expected to be able to respond to documents that they had no prior knowledge of.

The fourth factor weighs against sanctions, but only slightly. Although "the public policy favoring disposition on their merits strongly counsels against dismissal," the Ninth Circuit has also recognized that "this factor lends little support to a party whose responsibility it is to move a case towards disposition on the merits but whose conduct impedes progress in that direction." *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1228 (internal quotation omitted). This is because "a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits." *Id.* Such is the case here, where Plaintiff's failure to cooperate in discovery has required multiple continuances.

Finally, however, the Court finds that the fifth factor weighs against terminating sanctions, both for the case and for specific causes of actions. While Plaintiff has failed to adequately comply with the Court's order to provide responses to Defendant's interrogatories and RFPs, and has been warned by both the undersigned and the presiding judge that her failure to cooperate with discovery could lead to the dismissal of her claim, the Court ultimately finds that lesser sanctions are available, specifically evidentiary sanctions. Sanctions under Rules 37(b)(2)(A)(ii) and (c)(1) by forbidding the use of information, witnesses, or evidence on a motion or at trial, other than such information, witnesses, or evidence that has been produced by Plaintiff, will permit the case to move forward while mitigating prejudice to Defendant by preventing Plaintiff from producing a "smoking gun" at a dispositive motion or on the eve of trial. Because the Court will, as discussed below, impose evidentiary sanctions, the Court concludes that the fifth factor of the availability of lesser sanctions weighs heavily against the recommendation of terminating sanctions. Therefore, balancing the five factors, the Court DENIES Defendant's request for terminating sanctions.

### B. Evidentiary Sanctions

In the alternative, Defendant requests evidentiary sanctions precluding Plaintiff from introducing evidence at summary judgment that would be related to: (1) dual tracking (as encompassed by Interrogatory No. 1 and RFPs 14-15, 28, 55-56); (2) Plaintiff's single point of contact (as encompassed by Interrogatory No. 2 and RFPs 14-15, 28); (3) promissory estoppel (as

encompassed by Interrogatory No. 3 and RFPs 11, 14-15, 17, 22, 28, 49, 51-54, 59); (4) Plaintiff's qualified written request ("QWR") and RESPA claim (as encompassed by Interrogatory Nos. 4 and 5, and RFPs 14, 23, 36, 38-39, 41, 47, 57); (5) negligence (as encompassed by Interrogatory No. 6 and RFPs 14-15, 17, 22, 24, 28, 30-31); (6) Mr. Sen's testimony; (7) damages (as encompassed by Interrogatory No. 7 and RFPs 9, 30-31, 36, 38-39, 41, 47); and (8) equitable relief (as encompassed by RFPs 36, 38-39, 41, 47).

The Court finds that evidentiary sanctions are appropriate under Rule 37(b)(2)(ii), based on Plaintiff's failure to comply with the Court's discovery order. As discussed above, Plaintiff's responses to the interrogatories are deficient, comprised solely of wholesale copying and pasting of the second amended complaint or relying on a prior production of documents, with no identification of specific facts, witnesses, or documents. Plaintiff has also failed to make a meaningful production of documents, having apparently failed to provide any documents other than those previously provided by Defendant, despite having asserted that she had documents which supported her claims. Instead of admitting that she has no other documents, Plaintiff continues to assert her right to use documents that "become discoverable." Such refusal to participate in discovery appears to be willful, as Plaintiff has been repeatedly warned about her obligation to cooperate with discovery, only to provide responses and production that is plainly deficient. Further, again, to the extent Plaintiff justifies her failure to produce on alleged thefts, the Court finds this explanation not credible.

The Court also finds that evidentiary sanctions are necessary to prevent prejudice to Defendant due to Plaintiff's failure to cooperate with discovery. Given that the Court has already issued two discovery orders, and repeatedly warned that failure to cooperate in discovery could lead to sanctions, the Court finds that lesser sanctions would not be effective. There is no showing in the record before the Court that Plaintiff has any intention of complying with her discovery obligations, or that further orders to compel will result in any meaningful production or interrogatory responses. Thus, sanctions prohibiting Plaintiff from introducing previously undisclosed facts or evidence that are encompassed by Defendant's interrogatories and requests for production as listed above are warranted. These sanctions are also warranted under Rule 37(c)(1),

which states that information or witnesses that are not provided or identified as required by Rule 26(a) cannot be used on a motion, at a hearing, or at trial.

The Court therefore GRANTS Defendant's request for evidentiary sanctions as sought above, with the exception of Mr. Sen's testimony. Defendant asserts that Mr. Sen's testimony should be excluded because Defendant would be prejudiced if Plaintiff was permitted to present Mr. Sen's testimony as rebuttal evidence before Defendant had an opportunity to depose Mr. Sen. (Def.'s Mot. at 18.) Defendant's request is premature; the motion for sanctions was filed less than a week after the Court granted the motion to compel Mr. Sen's deposition, and there is no showing that Defendant has been unable to conduct Mr. Sen's deposition since.[4] Under these circumstances, exclusion of Mr. Sen's testimony is not warranted.

Therefore, the Court finds that Plaintiff is not permitted to present information or documents that has not been previously provided to Defendant in response to discovery requests on the following topics: (1) dual tracking (as encompassed by Interrogatory No. 1 and RFPs 14-15, 28, 55-56); (2) Plaintiff's single point of contact (as encompassed by Interrogatory No. 2 and RFPs 14-15, 28); (3) promissory estoppel (as encompassed by Interrogatory No. 3 and RFPs 11, 14-15, 17, 22, 28, 49, 51-54, 59); (4) Plaintiff's qualified written request ("QWR") and RESPA claim (as encompassed by Interrogatory Nos. 4 and 5, and RFPs 14, 23, 36, 38-39, 41, 47, 57); (5) negligence (as encompassed by Interrogatory No. 6 and RFPs 14-15, 17, 22, 24, 28, 30-31); (6) damages (as encompassed by Interrogatory No. 7 and RFPs 9, 30-31, 36, 38-39, 41, 47); and (7) equitable relief (as encompassed by RFPs 36, 38-39, 41, 47).

### C. Monetary Sanctions

Finally, Defendant seeks monetary sanctions in an amount commensurate with the expenses incurred in preparing this motion and the related joint discovery letters. (Def.'s Mot. at 19.) Rule 37(a)(5)(A) states that if a motion to compel disclosure or discovery is granted, "the

---

[4] The Court notes that Defendant's counsel called the undersigned's chambers with respect to Mr. Sen's deposition, but that the undersigned was unavailable. Although the Court called Defendant's counsel back, Defendant's counsel did not return the Court's call nor did they attempt to reach out again. The Court can only assume that Mr. Sen's deposition was completed or that the parties came to some other arrangement.

court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Rule 37(a)(5)(A) goes on to state that the court must *not* order payment if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery, the opposing party's nondisclosure was substantially justified, or if there are other circumstances that make an award of expenses unjust.

In opposition, Plaintiff argues that Defendant is "not entitled to costs or fees as this is a fraud case." (Plf.'s Opp'n at 1.) Plaintiff also contends that Defendant did not make good faith efforts to resolve the discovery dispute, based on Defendant's refusal to meet and confer prior to filing this motion. (*Id.* at 1-3.) The Court rejects both arguments. First, the fact that this is a fraud case is irrelevant to whether Rule 37(a)(5)(A) applies. Second, the issue is not whether Defendant met and conferred with Plaintiff prior to the filing of this motion for sanctions, but whether Defendant met and conferred with Plaintiff prior to the filing of the *joint discovery letters* that resulted in the order compelling discovery, which Plaintiff then failed to comply with. *See* Fed. R. Civ. P. 37(a)(5)(A)(i). Prior to the filing of the joint discovery letters, the parties met and conferred on the discovery disputes on July 13, 2017 and August 18, 2017. (*See* Dkt. No. 135 at 2; Dkt. No. 136 at 2.) Thus, Defendant met and conferred as required for purposes of this motion.

Although the Court rejects Plaintiff's arguments, the Court finds that monetary sanctions are not warranted in this case. Specifically, Defendant failed to provide any information on the amount of sanctions sought or any supporting documentation until one business day before the hearing, when Defendant filed a declaration that listed the hours worked. Defendant did not provide any time records, or any information about counsel's experience; without such information, the Court cannot award any attorney's fees, as the Court has no basis to judge whether the amount sought constitutes "reasonable expenses." "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, Defendant produced no evidence in support of the hours worked. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("In

16

determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended"). Accordingly, the Court DENIES Defendant's request for monetary sanctions.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's motion for sanctions. The Court DENIES Defendant's request for a recommendation of terminating sanctions as well as monetary sanctions, but GRANTS Defendant's motion for evidentiary sanctions. Plaintiff is prohibited from introducing facts and evidence not previously produced in response to Defendant's discovery responses, which relate to the following topics: (1) dual tracking (as encompassed by Interrogatory No. 1 and RFPs 14-15, 28, 55-56); (2) Plaintiff's single point of contact (as encompassed by Interrogatory No. 2 and RFPs 14-15, 28); (3) promissory estoppel (as encompassed by Interrogatory No. 3 and RFPs 11, 14-15, 17, 22, 28, 49, 51-54, 59); (4) Plaintiff's qualified written request ("QWR") and RESPA claim (as encompassed by Interrogatory Nos. 4 and 5, and RFPs 14, 23, 36, 38-39, 41, 47, 57); (5) negligence (as encompassed by Interrogatory No. 6 and RFPs 14-15, 17, 22, 24, 28, 30-31); (6) damages (as encompassed by Interrogatory No. 7 and RFPs 9, 30-31, 36, 38-39, 41, 47); and (7) equitable relief (as encompassed by RFPs 36, 38-39, 41, 47).

IT IS SO ORDERED.

Dated: November 21, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge